Campbell J.

This evidence ought to go to the Jury.

Overton J.

The different acts respecting removals, have been correctly adverted to, though he could not accord with the construction of those acts by the defendant’s counsel. The language of the acts is general, and not confined to any species of claim. Taking all the acts together, it seemed to him, that county entries might be removed, in case of being lost by better claims, to any part of the state, except within the military bounds, and the lands reserved to the use of the Indians by the act of 1783. The 7th Secton of the act of 1786 c. 20, according to his view of the subject, was opposed to the argument on the part of the defendant.
This section declares, that all the surveys already made for removed warrants, in John Armstrong’s office, shall be good. It will be recollected that two different laws had passed in April & October 1784, authorising removals generally. The making of the law of 1786, implies that a doubt had existed, whether the right of removal allowed by those laws, extended to John Armstong’s claims. This section of the act of 1786 puts the question, as to those claims out of doubt. Now had the two first mentioned laws been passed with a view to John Armstrong’s claims exclusively, it is scarcely probable the Legislature would have found it necessary, to pass a law in the year 1786 declaring the right of removal, as extending to those claims. The second condition of the session act 1789 c. 8, provides for the perfection of all claims; and makes no alteration in the law respecting removals. Nor does the argument drawn from the second section of the act of April 1778, seem to be tenable. This section provides as to county entries, that in cases where lands may be *36 lost by older claims, the purchase money shall be refunded. The acts of April 1784 c. 14 s. 7 and Oct. 1784, c. 19 s. 6, in general language, provide, that all claims may be removed. These acts either intended to repeal the second section of the act of 1778, or were intended as a cumulative remedy. The result is the same, as to the question before the court. It is however probable, the latter was intended by the Legislature. When we add to these considerations, the practice of the state of North Carolina in issuing grants on removed county warrants, and the acquiescence of the United States after the cession act, but little doubt can remain of the intention of the legislature.
The absurdity insisted on by the defendant’s counsel, in permitting removed county warrants, does not occur with the same force with which it was urged. When we consider when these acts passed respecting removals, John Armstrong’s office was shut: All entries had been made, that were intended ; and as removals were not matter of right, but of grace, there was no injustice in permitting removals of county claims, within those bounds, more than to any other place. A removed warrant could not affect any claim previously entered in John Armstrong’s, or any other office. In authorizing removals, the state did not violate any rights previously acquired ; and as to the price paid the state for county, and John Armstrong's claims, it was the same, after John Armstrong's office opened.
The next point to be considered is, whether this court, sitting as a court of common law, can receive the evidence now offered. As between individuals, it occurs to me strongly, that the consideration, on which a grant issued from the state, cannot at least in a court of law, be inquired into, if it can in a court of equity, of which much doubt may be rationally entertained. It is however true, as stated by the defendant’s counsel, that nearly all the instances in the English books, of avoiding or considering a grant from the king void, occurred in a court of law. But on examination, we shall find that many of the principles attached to the king’s grants, do not apply here, for reasons, many of which will not be *37 noticed at this time. In the opinion given in the case of Vincent’s Lessee vs. Conrad (b) they were adverted to at length. There is certainly much apparent contradiction in the cases respecting the king’s grants, to say the least of it, as will be found by consulting Viner’s and Bacon’s Abridgments, title prerogative of the king. One sensible distinction however, may be perceived, that there are two kinds of grants in England, assertive, and suggestive. The first does not contain any recital. The latter always does ; and it has been adjudged there, that the consideration is not inquirable into in the first case, 12 Mod. 78 King vs. Kemp. 17 Vin. Ab. 151 MC. in N. The grant before the court, is of the first kind, and does not contain any recitals of the suggestion of the grantee. It is not however to be understood, but that the state might avoid its own grants on scire facias, as against a person committing a fraud. Individuals ought not to be permitted to bring in question the consideration on which a grant issued, or whether it were regularly obtained, or not. The state has issued a grant which does not contain any recitals, so as to put all men on an inquiry as to the truth of it. Such a principle would be repugnant to the ordinary principles of contracts. And beside, would open a flood of inconveniences that would be intolerable. The mode of acquiring land titles is already complex, and if the legality or regularity of issuing grants, could be made subjects of inquiry in all cases, there would be no end of confusion and distress (c.) Lagates case, 10 Co. 112, turned on the point of misrecital, and therefore it would seem, does not apply to the case before the court. It was conformable to the provisions of the laws of North-Carolina, that a grant might issue for lands at this place, upon county claims, and that is all this court has to look to in a contest between two individuals. Whether a person having possession without any kind of *38 claim is competent to institute an inquiry into the plaintiff’s grant, I will not undertake to say. If it were legal to make this inquiry, it would seem that he would not, because the evidence offered is of an equitable nature, and he had no that it was not competent to any bare possessor of land, to call into question, any title good on the face of it.

Humphrey's J.

This case lies within a much narrower compass, than is supposed by the defendant's counsel in their argument. Here is a state grant, which states the receipt of ten pounds per hundred acres. In a court of law, we cannot proof to falsify this receipt ; and in a court of equity, the defendant could not be permitted to call the plaintiff’s grant in question, without some legal claim, or title. This is a different question from permitting an older entry, with a younger grant, to contend in a court of law. That position had been acted, under, and acquiesced in ; and he had no disposition to be dissatisfied with that practice. The evidence offered cannot be received.

Campbell J.

to the jury, observed, there appeared to be a difference of opinion with the court, as to the law. Agreeably to the principles of our government, it is the province of the jury to decide the law as well as the fact, and the jury will act accordingly in this case. The grant is not legal, there being no law to authorize the consolidation of warrants except one which applied to swamp lands in the lower part of North-Carolina. It was decided in the case of Lytle’s Lessee vs. Barfield, that a warrant could not be divided. The grant is not valid, and the jury are the proper judges whether it is so or not. If in obtaining a grant, an individual does not pursue the requisites of the law, it would be useless.

Overton J.

stated to the jury it was the province of the court to declare to the jury, what the law was, and in civil cases particularly, should receive it as delivered; in their application of it, to facts, of which, they were the exclusive judges. In this case it appears there was not any marked lines, nor corners at *39 the time of the survey. Taking this view of the subject alone, the claim of the plaintiff would be invalid. But it will not be so if the potential existence of these lines and corners can be reduced to a certainty by something that is certain. In this case the plaintiff’s claim has reference mediately to the spot where the state line crosses Cumberland river, which is a certain and notorious place. That is, the tract of Stokely Donelson for 60,400, calls for that spot, Donelson’s 25,060 acre tract calls for the north east corner of his first tract, and the plaintiff’s claim for the north east corner of Donelson’s last tract, proceeding from west to east ; thus it would seem, that the north east corner of the plaintiff’s claim, is ascertainable. At the time this survey was made, it was lawful in running cut lands to make some allowance for the roughness of the ground ; the jury may now make the same reasonable allowance, as was then customary, and fix the boundary of the land accordingly. The jury ought however, to be clearly satisfied that the defendant would fall within the plaintiff's claim ; if not they ought to find for the defendant, and he should hold his possession.

Humphrey's J.

It is the province of the court declare the law, and of the jury to find the facts.—The court is to give its opinion of the law, and it was prudent in the jury to pay attention to that opinion ; but they might find contrary to the directions of the court ; and the only control the court has is to grant a new trial.

Mistrial.

 By 4 Am. law Jour. p.1.

 In the case of Polk vs. Wendel and alias in the S. C. U. S. the court proceeded on the same principles, but say that there are two grounds, on which the validity of a grant may be examined, or inquired into, viz. want of property in the grantor, in the thing granted, and secondly want of authority in the officers of government, to execute the grant.